# MENKEN SIMPSON & ROZGER LLP

80 PINE STREET, 33RD FLOOR
NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616
FACSIMILE: (212) 509-8088
WWW.NYEMPLOYEELAW.COM

BRUCE E. MENKEN
SCOTT SIMPSON
JASON J. ROZGER △
BRENNA RABINOWITZ
RAYA F. SAKSOUK

△ ALSO ADMITTED NJ

ALAN SERRINS
OF COUNSEL

April 19, 2023

**BY ECF**
Hon. Steven D. Grimberg, U.S.D.J.
United States District Court
Northern District of Georgia
1701 Richard B. Russell Federal Bldg.
75 Ted Turner Dr., SW
Atlanta, GA 30303

    Re:    <u>Nunes, et al. v. LaserShip, Inc.</u>, No. 1:22-cv-02953

Your Honor:

    This firm is co-counsel for Plaintiffs and putative class members in the above-captioned case. Please accept this letter in response to Defendant LaserShip's Notice of Supplemental Authority, filed April 6, 2023, in support of its Motion to Stay and Compel Arbitration. *See* ECF No. 22.

    At issue here is the scope of the Federal Arbitration Act's ("FAA") "transportation worker" exemption. *See* 9 U.S.C. § 1 (exempting from FAA coverage certain classes of workers "engaged in foreign or interstate commerce"). Plaintiffs' position, as detailed in their opposition to Defendant's motion to compel, is that they and the putative class are exempt from FAA coverage because they are directly involved in the free flow of goods across state lines. *See* ECF No. 19.2 (Plaintiffs' Memorandum of Law in Opposition) at 1-9; *Gates v. TF Final Mile, LLC*, 614 F. Supp. 3d 1286, 1293-94 (N.D. Ga. 2020) (holding final-mile delivery drivers exempt from FAA coverage). They may not cross state lines themselves, but as the Supreme Court recently made clear in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022) (holding that airplane cargo loaders who never left the state were still "engaged in interstate commerce"), the transportation worker exemption does not require them to. It is enough that they handle goods in the continuous "stream" or "flow" of interstate commerce. *See McIntyre v. FLX of Miami, Inc.*, No. 08-20030-CIV, 2008 WL 4541017, at *5 (S.D. Fla. Oct. 8, 2008) (emphasizing "practical continuity of movement across state lines"), quoting *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993); *Rittmann v. Amazon.com, Inc.*, 971 F.3d

904, 913 (9th Cir. 2020) (defining the "flow" of interstate commerce as "'the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer'"), quoting *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 195 (1974).

In its Notice of Supplemental Authority, Defendant cites two cases it believes support a contrary reading of *Saxon* and Section 1 of the FAA. One, an Oklahoma state court decision, is far out of step with the applicable case law and goes against the vast weight of authority on the question of whether last-mile delivery drivers are exempt from the FAA. The other is based on very different facts from this case and, in any event, its reasoning fully supports Plaintiffs' position.

The first case, *Mathis v. James*, No. 120246, ___ P.3d ___ (Okla. Civ. App. Dec. 16, 2022) (Defendant's Ex. A), is a state court decision that was wrongly decided and that has no precedential value. The court in *Mathis*, though relying heavily on *Lopez v. Cintas Corp.*, 47 F.4th 428 (5th Cir. 2022), failed to consider the essential dividing line between *Lopez* and last-mile delivery cases like this one. That is: the goods in *Lopez* (work uniforms and supplies for a company, Cintas, which re-sold them through its own salespeople) had "come to rest" inside the state **before** the plaintiff sales representative became responsible for delivering them. *See Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021) (applying Ninth Circuit and First Circuit test and considering where goods "came to rest"). As Plaintiffs explain in their brief (*see* ECF No. 19-2 at 7 n.4), the goods in *Lopez* were therefore no longer engaged in the "practical continuity of movement across state lines." *McIntyre*, 2008 WL 4541017, at *5. Their interstate journey had ended by the time Lopez entered the scene.[1]

Here, by contrast, when a LaserShip driver enters the scene, it is because a Georgia consumer has specifically ordered the interstate shipment of a certain good—and the LaserShip driver is indispensable in carrying out that transaction. *See Tomlin v. JCS Enterprises, Inc.*, 13 F. Supp. 3d 1330, 1342 (N.D. Ga. 2014) ("The intent at the time of transportation commences 'fixes the character of the shipment for all the legs of the transport within the United States.'") (internal quotation marks and citations omitted). *Mathis*, which did not consider these nuances and, likewise, did not adequately consider the Ninth or First Circuit cases on point, clearly does not represent the consensus among federal courts to have ruled on the FAA's transportation worker exemption. *See* ECF No. 19-2 at 3 n.3 (collecting cases).

---

[1] *See Rittmann*, 971 F.3d at 916 (9th Cir. 2020) ("Once the poultry reached the slaughterhouses, any further 'commerce' involving the poultry required new or subsequent transactions, all of which took place within the state of the slaughterhouse. Those transactions thus marked the dividing line between interstate and intrastate commerce."), discussing *ALA Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).

The other case cited by Defendant, *Collazos v. Garda CL Atlantic, Inc.*, No. 21-cv-2095, 2023 WL 2734670 (E.D.N.Y. Mar. 31, 2023), rests on very different facts. Plaintiff in that case was an armored car driver, picking up and delivering coins and currency. *Id.* at *1. The transportation of that currency from Point A to Point B—both located in the same state—cannot be compared to the complex "hub-and-spoke network" that LaserShip has set up around the country with the explicit aim of creating a more efficient means of "transcontinental delivery." ECF No. 19-2 at 5; *see also* https://www.ontrac.com/transcontinental-e-commerce-delivery/ ("Connecting Retailers To Their Customers With Coast-To-Coast E-Commerce Delivery"), last accessed April 19, 2023.[2] The plaintiff in *Collazos* simply was not a part of the "continuous operation to move goods across state lines" that exists in this and other "last mile" delivery cases. And, importantly, *Collazos* recognized the critical role played by "continuity of movement" in these inquiries. *See id.,* at *8 (noting that *Saxon* and cases following it "hinge on the existence of an on-going and closely integrated operation to transport goods out of state"). Plaintiffs here play a "direct and necessary role" in interstate commerce; without last mile delivery, LaserShip has no enterprise.

Thus, Plaintiffs respectfully request this Court disregard the cases cited in Defendant's Notice of Supplemental Authority and deny Defendant's Motion to Stay and Compel Arbitration in its entirety.

Respectfully submitted,

*s/ Jason Rozger*

---

[2] According to its website, LaserShip is now doing business under the name OnTrac. *See* https://lasership.com/ ("LaserShip is Now Ontrac"), last accessed April 19, 2023.