IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ELBIO NUNES, THEODORE SPIES, and
MARQUE HART, individually and on behalf
of those similarly situated,

    Plaintiffs,

               v.

LASERSHIP, INC.,

    Defendant.

Civil Action No.
1:22-cv-02953-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant LaserShip, Inc.'s Motion to

Stay and Compel Arbitration or, in the Alternative, to Strike Collective Allegations

[ECF 14]. After careful consideration, the Court **GRANTS** the motion to stay and

compel arbitration.[1] The Court also **GRANTS** LaserShip's motions to file

supplemental authority [ECFs 22 and 24].

## I.    BACKGROUND

LaserShip is a "last mile" courier company that contracts with local

independent contractors and business owners to deliver goods to consumers.[2]

---

[1]    Plaintiffs do not contest, and thus concede, LaserShip's argument that they must pursue their claims on an individual basis. ECF 19-2, at 7 n.1.

[2]    ECF 1, ¶¶ 2–3.

These independent contractors pick up packages from LaserShip's warehouse and deliver them to local customers. Plaintiffs Elbio Nunes, Theodore Spies, and Marque Hart (collectively, "Plaintiffs") each contracted with LaserShip to provide these services.[3]

During various time periods LaserShip owned and operated certain warehouses, all within the State of Georgia.[4] Plaintiffs' "job duties involved working on the warehouse sorting line and loading, unloading, and delivering packages from LaserShip warehouses to commercial and residential buildings in the State of Georgia."[5] Plaintiffs would either arrive at the warehouse to find their packages pre-sorted and ready to be loaded into their delivery vans, or they would be required to search the warehouse and work on the sorting line until they found and gathered all of the packages they needed to deliver.[6]

---

[3]   *Id.*

[4]   *Id.* ¶ 23.

[5]   *Id.* ¶ 28.

[6]   *Id.* ¶ 36.

Each Plaintiff signed an Independent Contractor Agreement with LaserShip.[7] Each Agreement contained a dispute resolution section, which included an "Arbitration Provision".[8] This section reads:

> Section 22 of this Agreement requires each party to arbitrate any claims it may have against the other, including but not limited to any individual claims by the below signatory performing services on behalf of Contractor. That provision prohibits the parties from bringing class, collective, consolidated, or representative actions against each other, and waives the parties' right to a jury trial (the "Arbitration Provision"). The Arbitration Provision is optional and not a condition of this Independent Contactor Agreement. Contractor may opt out of the agreement to arbitrate if it so chooses.[9]

The Agreements also contain a provision delegating to the arbitrator the authority to decide which disputes are within the scope of the Arbitration Provision (the Delegation Provision).

Plaintiffs filed suit on July 26, 2022, seeking to recover for unpaid overtime under the FLSA.[10] On October 3, LaserShip filed the instant motion to compel arbitration.[11] LaserShip contends that, because the Independent Contractor

---

7    ECF 14-3; ECF 14-4; ECF 14-5.

8    ECF 14-3, at 17–18; ECF 14-4, at 17–18; ECF 14-5, at 17–18.

9    ECF 14-1, at 4.

10   ECF 1.

11   *Id.* at 1.

Agreements include an enforceable, binding arbitration agreement under the Federal Arbitration Act (FAA), Plaintiffs must pursue their claims through individual arbitration.[12] Plaintiffs counter that they are exempt from arbitration under Section 1 of the FAA, the transportation worker exemption.[13] 9 U.S.C. § 1. This is the heart of the dispute: whether Plaintiffs are engaged in interstate commerce such that § 1 exempts them from the FAA and thus, does not require them to pursue their claims through arbitration.[14]

## II.    LEGAL STANDARD

The FAA reflects the strong federal policy in favor of arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (noting that the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements'") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). *See also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration.")

---

[12]    *Id.* at 4–7.

[13]    ECF 19-2, at 1.

[14]    While the Independent Contractor Agreement contains the Delegation Provision, LaserShip concedes that whether the transportation worker exemption applies is a question the Court must decide. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). *See* ECF 14-1, at 11 n.5.

(citations omitted). Even so, parties cannot be required to submit a dispute to arbitration unless they have agreed to do so. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citations omitted); *Howsam*, 537 U.S. at 83; *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

The FAA does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers *engaged in foreign or interstate commerce.*" 9 U.S.C. § 1 (emphasis added). "This 'exemption' . . . excludes from the reach of the Federal Arbitration Act employees who are in a class of workers: (1) employed in the transportation industry; and (2) that, in the main, actually engages in interstate commerce." *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1340 (citing *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005)).

## III.   DISCUSSION

The parties' respective positions are fairly straightforward. They do not dispute that the Independent Contractor Agreements were valid contracts that contain an otherwise valid arbitration clause.[15] Instead, the parties dispute only

---

[15]   *See generally* ECF 14-1, 19-2.

whether Plaintiffs are exempt from the FAA under the transportation worker exemption.[16]

### a.      The transportation worker exemption does not apply to Plaintiffs.

The Eleventh Circuit has already addressed whether the transportation worker exemption applies in an almost identical factual scenario to the one here. In *Hamrick v. Partsfleet, LLC*, the defendants, a group of last-mile delivery companies, contracted with local delivery drivers to pick up goods from their local warehouse and deliver them to "their final destination." 1 F.4th at 1340. The goods at these warehouses were "manufactured in, and shipped from, other states and countries," but the plaintiff only dealt with the goods once delivered locally. *Id.* at 1341. The plaintiff brought suit and the defendants moved to compel arbitration. Like in this case, the plaintiff argued that he was exempt from the FAA under the transportation worker exemption. The district court denied the defendants' motion to compel, concluding that last-mile drivers were exempt under § 1 because "they transported goods that had traveled in interstate commerce and the transportation of goods in interstate commerce was not incidental to their job." *Id.* at 1343.

---

16    ECF 14-1, at 11–17; ECF 19-2, at 1–9.

The Eleventh Circuit reversed. It rejected the "drivers' view that the transportation worker exemption is met by 'performing intrastate trips . . . transport[ing] items which had been previously transported interstate.'" *Id.* at 1349. According to the Eleventh Circuit, the district court erroneously focused on the "movement of goods" instead of the "class of workers," as required by the plain language of the exemption. *Id.* at 1351. The exemption, the circuit court explained, applies only where the employee is part of a class of workers in the transportation industry that engage in interstate commerce. *Id.* at 1349. The court emphasized that the test focuses on what the workers themselves do, not where the goods have been.

The Fifth Circuit has since followed suit. In *Lopez v. Cintas Corp.*, 47 F.4th 428, 430–32 (5th Cir. 2022), the circuit court held that a last-mile delivery driver who "picked up items from a Houston warehouse (items shipped from out of state) and delivered them to local customers" did not engage in interstate commerce and was not exempt under § 1 of the FAA. "The relevant class of workers . . . [did] not have . . . a 'direct and necessary role' in the transportation of goods across borders." *Id.* at 433.

Plaintiffs here make the same argument that was rejected in *Hamrick* and *Lopez*—that last-mile delivery drivers are engaged in interstate commerce because

the *goods* they transport have traveled interstate and remain in the stream of commerce until delivered.[17] They do not.

There is no doubt that Plaintiffs belong to a "class of workers employed in the transportation industry." *Hamrick*, 1 F.4th at 1346. They locally transport packages from LaserShip's warehouse to commercial and residential buildings.[18] This is paradigmatic "transportation industry" work and no party disputes this. But like the plaintiffs in *Hamrick* and *Lopez*, Plaintiffs in this case do not actually engage in interstate commerce. Their job entails sorting and loading packages from the local LaserShip warehouse and delivering the goods locally.[19] The Supreme Court recently held that, for a "class of workers" to be "engaged in foreign or interstate commerce," they must be "directly involved in transporting goods across state or international borders." *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022). Plaintiffs here are too far removed from interstate activity. The Court concludes that Plaintiffs do not fall within § 1's exemption.

---

17   ECF 19-2, at 4–5.

18   ECF 1, ¶ 28.

19   *Id.*

### b.      *Saxon* **does not overrule** *Hamrick.*

Plaintiffs argue that *Saxon* overrules *Hamrick*. 142 S. Ct. 1783, 1791 (2022).  In

*Saxon*, the Court found that the § 1 exemption applied to "airplane cargo loaders"

who physically load and unload cargo "on and off airplanes bound for a different

State or country." *Id.* at 1790. The court determined that this class of workers

"engaged in foreign or interstate commerce" even though they did not physically

cross state lines. *Id.* However, the Supreme Court explicitly left open the question

of whether "last leg" delivery drivers like Plaintiffs here fall within § 1's

exemption.[20] With this question left open in *Saxon*, the Court must apply the

binding, on-point Eleventh Circuit case law in *Hamrick* and find that Plaintiffs do

not meet the transportation worker exemption.

---

[20]   *Saxon*, 142 S. Ct. at 1789 n.2 ("We recognize that the answer will not always be
so plain when the class of workers carries out duties further removed from the
channels of interstate commerce or the actual crossing of borders. *Compare*, e.g.,
*Rittmann v. Amazon.com, Inc.*, 971 F. 3d 904, 915 (CA9 2020) (holding that a class
of "last leg" delivery drivers falls within §1's exemption), *with*, e.g., *Wallace v.
Grubhub Holdings, Inc.*, 970 F. 3d 798, 803 (CA7 2020) (holding that food
delivery drivers do not). In any event, we need not address those questions to
resolve this case.").

## IV.   CONCLUSION

LaserShip's Motion to Stay and Compel Arbitration [ECF 14] is **GRANTED**.

LaserShip's motions to file supplemental authority [ECFs 22 and 24] are

**GRANTED**.

The parties are **ORDERED** to arbitrate in accordance with their individual

agreements. The parties are further **ORDERED** to file with this Court every 180

days a joint status report concerning the status of Plaintiffs' respective arbitration

proceedings. The parties must notify the Court, within 7 days, if their dispute

resolves through arbitration, settlement, or otherwise.

The Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this

case. This closure is not a dismissal and does not preclude the filing of documents.

The case may be re-opened if necessary. If the parties fail to file a joint status report

at least every 180 days as instructed, however, the case will be dismissed with

prejudice at that time.

**SO ORDERED** this 28th day of September, 2023.

Steven D. Grimberg
United States District Judge